Argument not to exceed 15 minutes per side. Mr. Moffitt, you may proceed with the appellant. Good morning. David Moffitt on behalf of Thomas Richardson Appellant. Good morning. This case represents one of the worst instances of prosecutorial misconduct. How much time are you reserving for rebuttal? I'm sorry, I had mentioned five minutes. Worst instances of prosecutorial misconduct that I think has come before the court in a long time. The federal district court, the magistrate's opinion could not even list all the instances and discuss each one. It had to basically deal with the instances of misconduct category by category. And many of these instances were unusually egregious. Whereas in Cawthorn, a case that Judge Clay authored, there was one significant instance of referring to the defendant as similar to Dahmer and Smith. Here there were innumerable instances of such transgressions. There was comparing this situation to the 9-11 terrorist attacks. And in fact, this prosecutor had been previously cited in another opinion. But the court ruled it was an error. I mean, they said you're a lousy attorney for doing this, but it's not error. And that's part of the general structural problem of trying to bring prosecutors to justice. I digress from the key points of this case. But in fact, I brought before this honorable court the case of Alex Aceveld, where the prosecutor and the judge conspired and made a transcript of the conspiracy to perjure the entire trial. Last month I had an inmate released 20 years early from a sentence because the Genesee County Prosecutor's Office came on TV and admitted that they had perjured the entire trial. It's hard to get an appellate court to say that a prosecutor has committed a significant due process error. However, here... Those instances you mentioned are not relevant here. I understand. It's an actionable misconduct. What you're complaining about is you think the prosecutor said something prejudicial in his argument. I said I did digress, Your Honor, but it is part of a larger concern that ultimately has to be addressed. However, if I may return to the specific here. The Court of Appeals said that this was not error because they made unreasonable determinations of fact and they did not follow clearly established Supreme Court law. They analyzed each instance individually. There was no evidence that they analyzed the effect of these many, many errors cumulatively. Now, they did use the word cumulatively. I think some wise appellate judge inserted that into the opinion at the end just to try and prophylacticize that opinion against the kind of challenge I'm offering. But in fact, they did not analyze them collectively. There is no paragraph, no analysis of the collective effect of these individual instances of misconduct. And that's contrary to common sense. If you're familiar with professional fighting, it's quite possible that one kick to a sensitive area might be overlooked. But dozens of kicks to a sensitive area, there is a cumulative effect that cannot be denied. When a pitcher throws a bean ball, there's a lot of people are angry about it. But when he throws the third bean ball, the dugout's empty. There's a cumulative effect. Let me just tell you that your sports analogy is a loss. I mean, I have no idea what a bean ball is. So go back to the prosecutorial misconduct. And I know you said that it was cumulative and that basically infected the trial and denied your client, denied the defendant of fair trial. In the 9-11 comment, the judge said that you shouldn't have done that, but that it was a way to help the jury understand circumstantial evidence. So that being the case, what's wrong with that? Well, what's wrong with that is that it's contrary to clearly established Supreme Court law because it focuses on not on the effect on the fairness of the trial, but merely offers a discussion of what the prosecutor was trying to do. In effect, it's a series of apologies by the Court of Appeals for what the prosecutor did without focusing on what the law says it must focus on, which is the effect on the fairness of the trial. The Court of Appeals says, oh, they're trying to explain circumstantial evidence, which, you know, to use that example to explain circumstantial evidence, I don't think I have to comment on. But when you fail to focus on what the law requires, which is the effect of the fairness on the trial, as I just indicated a moment ago, there is no analysis of that. And that's a mistake on the Court of Appeals' part to focus on merely trying to offer an explanation on behalf of the prosecutor. Well, he was just trying to do this. Rather than say, what was the effect of trying to get these people to relive that moment of terror and fear that everyone felt in horror when we heard this? And that is a physical effect on people. That raises their blood pressure. That increases their respiration. That causes them psychological flashbacks to that time and the time that we saw our dog killed or our wife pass away in the hospital. You can't just dispel that with a generic instruction at the end of the trial saying, hey, put aside your prejudices and stuff. Maybe an experienced group like these attorneys in this panel could do that after years of training to do so. But a jury can't do that on just a small say-so. And that's contrary to the clearly established Supreme Court law because when you implicate a specific constitutional right of an accused, the Darden case went out of the way to say that you have to give a specific instruction. You read out the testimony. The prosecutor just said thus and so and this. And you all should know that that is improper and you should ignore it. Just a standard instruction won't. Mr. Boffitt, let me ask you. Judge Reinhart. I wondered in reading over the transcript where the judge was most of the time in this case. But assuming it was his duty to explain what the evidence should show and not the attorney. I mean, he decides questions of law, not the attorney. So if I follow you, and if I understand all of the cumulative effect, would we not still be left with the situation of having to balance that between what I think is pretty overwhelming proof of this man's guilt? Understood. If I accept your arguments, isn't that where I'm at at the end of the day? I still have to balance that against the overwhelming proof? You still have to deal with the, quote, overwhelming conclusion of the Court of Appeals, which I believe was, again, completely contrary to clearly established Supreme Court law in that, first of all, the Court of Appeals appeared to base its, and there's something really off with that opinion, where they analyze not the effect of the fairness on the trial, but just sort of make excuses for the prosecutor on each instance, where they base their, quote, overwhelming analysis on their initial sufficiency of evidence analysis, which, of course, assumes everything in the light most favorable of the prosecution and also finds all conflicts of evidence in the prosecution's favor. That's not the test you're supposed to use. Berger v. U.S. says that you take into account the conflicting evidence. Berger actually cited the credibility problems of the prosecution witnesses in adding up whether the evidence was overwhelming against Berger or not. And in doing so, made clear that you don't use a sufficiency of the evidence analysis, which is, like I said, completely overlooks the factors that Berger relied upon. And, again, That's what I said. I didn't say sufficiency of evidence. I said you only have to balance it to see if the evidence is overwhelming. Yes, you do. And the Court of Appeals said it's overwhelming. And I'm saying they used the wrong analysis in coming to that opinion because they used their sufficiency of the evidence test to come up with the fact that the evidence is overwhelming. I want to comment on one of the centerpieces of the prosecution's case with respect to overwhelming evidence. The prosecution says that this man allegedly executed this elaborate plan, got insurance, got a will, which the wife agreed to get, in contemplation of this episode on the cliff. But the fact of the matter is, these inconsistent statements are more indication that he did not plan this, that this was an accident. And why is that? Because no one plans, okay, we're going to get this insurance, we're going to get this will, and we're going to go up to the top of the cliff there, and then we're going to make a series of inconsistent statements about how it happened. No one would plan to do that. That's much more indicative of an individual who was shocked by events and made inconsistent statements about it, which the expert witness who testified said was consistent with something like that happening to somebody. But the jury rejected that. They found that, you know, the person was guilty considering all of that. They did. And this jury was poisoned by a series of prosecutorial remarks that was specifically calculated to tempt this balance. Like I said, when the expert testified that this was a normal response to the trauma that the man suffered, what did the prosecutor do to counteract that? Called the expert a whore. Good God. Is this where we've come to? Judge Sir Heinrich, in the early 1980s, you had a case called Wilson v. Stillwell Hospital, and Your Honor represented Sparrow Hospital. And there was a passing reference to one of the plaintiff's medical malpractice efforts. It was a post-operative infection case that there was a motive to testify he had been a... It was so mild. It was a four-to-three decision. That case was almost lost just on the basis of that statement. Here we have someone calling the witness a whore? But more compelling than that is the fact that your client had several conflicting accounts of how the incident that resulted in the death occurred, whether the victim was pushed, whether she slipped, whether he pushed her, whether he didn't. Your client offered so many conflicting versions of how this death occurred. You could well see the jury may have decided that not only that he did it, but they couldn't believe a word that he had to say. They could have found that, and it could have been because the expert was denigrated in that fashion, and it could have been they just didn't get it, that when you witness a trauma like this, you make inconsistent statements, and that's inconsistent with having this master plan to assassinate your wife and collect her insurance money. It makes no sense whatsoever that someone would elaborately plan this and then plan to make inconsistent statements. There's also plenty of evidence of his motive, of potential motive in terms of wanting to be with this other woman, his not wanting to get a divorce. There's all kinds of other evidence for the jury to look at here. So, I mean... There's all kinds of circumstantial evidence, and each point of circumstantial evidence was countered with alternative... You can't ask the court to go back and sit in the place of the jury... Of course not. I'm not sure why we're discussing these facts right now. Because I said I was going to digress, forgive me, and it was in the context of overwhelming, which it is not. That's why we briefly contested the facts. All right. You're out of time there. You'll have your rebuttal. Thank you. Thank you. Your Honors, and may it please the Court, Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, and respectfully requesting that this Court affirm the District Court's denial of habeas relief. I'm going to begin by responding to some of the things that we've just heard, and I think early on my brother said that it's difficult for courts to bring prosecutors to justice. And I think the reason is that on habeas review, it's not this Court's job to bring prosecutors to justice, right? Smith v. Phillips, which he repeatedly quotes in his insights in his brief, says that the aim of due process is not punishment of society for the misdeeds of the prosecutor, but avoidance of an unfair trial to the accused. And I understand that it's his position that it's both here, right? But to lead off by saying we need to punish society for the misdeeds of the prosecutors, is directly contrary to Smith v. Phillips. And I appreciate that he brought up Alexander Acevil, because that's exactly what happened in Acevil is the District Court granted habeas relief because it was trying to punish for the misdeeds of the prosecutor, who did in fact conspire with the judge to bring in perjured testimony. And the prosecutor was brought to justice by a criminal, by being disbarred and prosecuted by the Michigan Attorney General. This Court reversed the District Court's grant of habeas relief in Acevil because that's not what habeas relief was for. Alexander Acevil was not denied a fair trial. Well, his first trial was denied, but then he pled guilty. But I think Mr. Moffitt makes the point that prosecutors are ministers of justice, and prosecutors need to act ethically and serve their role and ensure the fair trial process so that we may not have to get to this unhabeas. I think that's his point, and we take that. Absolutely, and that is absolutely a fair point, and I don't take anything. I think reasonable minds can differ whether the prosecutor in this case went right up to the line or whether she went past the line. I think that reasonable minds can differ. I think a lot of this was a close call. And the fact that reasonable minds can differ is just another reason why the District Court's denial of relief needs to be affirmed because this is not something where the Michigan Court of Appeals was unreasonable in its adjudication, even if you disagree, which I don't disagree, in part because of the overwhelming circumstantial evidence of this guilt and in part because you have to look at these things in context. I also want to discuss procedural default, which is less interesting than the merits, but it's potentially dispositive, and I think it deserves discussion. In the reply brief, the claim is made that we waived any argument of procedural default by not objecting to the R&R. And so I need to respond to that by saying that this Court has held that a party that prevails under the R&R does not need to object regarding issues that they might have lost on in order to preserve them as an alternate basis for affirmance. That's Souter v. Jones. And second of all, we didn't lose on the procedural default issue in the R&R. The magistrate judge simply declined to decide it. And so we're left with a procedural default of most of the issues of prosecutorial misconduct and no argument made of cause and prejudice and no argument made of new, reliable evidence of actual innocence. And those are the things you need, one or the other. You need those to excuse a procedural default. So there's really no getting around the procedural default on most of the claims of prosecutorial misconduct. And then also two of the claims of prosecutorial misconduct are barred by the fact that the prosecutor was relying in good faith on the trial court's evidentiary ruling. Again, he quotes Smith v. Phillips as saying, well, this is wrong because you need to focus not on the prosecutor's misconduct but on whether it denied a fair trial. But that misses the point of Smith v. Phillips. First you have to find that there was misconduct before you say, well, the focus then is on the unfairness of the trial. If the prosecutor is relying in good faith on the trial court's evidentiary rulings, then there's no misconduct in the first place. And so you don't get to that question in Smith v. Phillips about focusing on the unfairness of the trial. So those two things, between the procedural default and the prosecutor's reliance on the trial court's evidentiary rulings, takes care of most of the prosecutorial misconduct claims. I heard my brother counsel say that there's no evidence that the Michigan Court of Appeals looked at these prosecutorial misconduct claims cumulatively, except that in the decision it says that these errors, that this conduct, either looked at singularly or cumulatively, didn't deny him a fair trial. This court has to take the Michigan Court of Appeals when it says what it says. The U.S. Supreme Court has said that habeas courts don't exist to critique opinion writing practices by state courts. If the state court says it looked at it cumulatively, it looked at it cumulatively. So that deserves respect and it deserves deference. I'm not sure where he's getting the idea that they used the sufficiency standard to find this evidence overwhelming. The evidence on the record is overwhelming. There are the multiple inconsistent stories. And it wasn't just that, well, first he told one story, and then he remembered and he told a different story. He told both stories, all three, excuse me, all three stories, right, that he didn't see her fall, that he did see her fall and he thought she tripped, and that he did see her commit suicide, to multiple people, not just law enforcement, over the course, after the murder. And he had inconsistencies about the inconsistency. Sometimes he said that it was because of his memory from a brain injury, that many, many people who interacted with him said he had no problems with memory, but he had a brain injury. And then other times he said, well, I didn't want anyone to think she committed suicide. And then other times he said both. In fact, in his brief he says both, and there are not even consistent explanations for the inconsistency. You've got the fact that he said he saw a sandal on the trail, and that made him look over the edge to see, that made him worry, when in fact one sandal was on her foot and the other sandal was on a ledge, below, like well below the trail. Another time he saw flip-flops in a tree. And I don't understand how the jury hearing this evidence, how you don't say that's overwhelming evidence, even before you get to the repeated abuse, his urgent need to get a will right before they go up north. Your counsel would argue that's why they had an expert was to make those explanations, and the prosecutor once again stepped up and committed an error by calling the expert a whore, and I suspect that expert was no more a whore than the state's paid for expert that also testified. Well, yes, and I'm not here to defend calling anybody a whore under any circumstance. Including a paid expert in the state. Yes, the state had a paid expert as well, and the state also had a lot of people who, you know, who, I mean, yeah, there were paid experts on both sides, but I think the jury can also take that for what it's worth and say, I mean, I think about traumatic moments that have happened in my life, and I remember them with vivid clarity. I think the jurors can think that as well. And the idea, this is not a minor discrepancy. This isn't, well, he came up and first he said, well, I think she tripped and fell, and then later, well, I think she, you know, she tried to say something to me, and then she turned and jumped, and it's this discrepancy. He said that he came from the bathroom and he didn't see her at all, right? And then he said that he saw her, and she looked at him and fell over. And then he said that he didn't see her, and then he said that he did. And the idea that this is a head injury that nobody's seen any evidence of before the murder is the idea that one paid expert, whether they're described as a whore or not, the jury knows that they're an expert on the defense's payroll. And so the idea that one paid expert can counteract a dozen or more witnesses' testimony, saying, yeah, I interacted with them all the time. As a prosecutor, what do you think of an attorney that says that about an expert? I think it crosses the line. I mean, I absolutely, I think it crosses the line. And I think that this is a prosecutor, and again, she's been criticized before. The R&R mentioned that, that she was criticized for bringing up 9-11. And, I mean, this is an attorney who has drawn the attention. I mean, look at the Michigan Supreme Court's opinion, right? It wasn't a single sentence, as hundreds of them are. They went into criticizing this prosecutor for this. And this happens. This is an aggressive prosecutor, absolutely. This is a prosecutor who has crossed the line. And this is someone who I think that whether this is taken as a criticism or not, I think that as an observation, I guess, without putting a value judgment, this is somebody who puts a lot of emotion into her work, both for better and for worse. So, counsel, you said that crosses the line. She's been criticized before. And you've also said that habeas is not the way to remedy that. But going back to Mr. Moffitt's position, where there is this criticism and people say, you know, bad prosecutor, but, you know, it's sanctioned activity, how do you ever remedy that? How do you ever bring that person back in line with their ethical role as a minister of justice? Because if we say, I mean, if a person uses a calculus, I'm going to do whatever it takes to win, and I know this comes up with the line or crosses the line, and the court keeps saying, bad prosecutor, but it's okay, why does it ever stop? And do you not become complicit in the possible denial of the fair trial process? I mean, Michigan has an attorney grievance commission, and so Michigan has ethical rules, just like every jurisdiction does, has ethical rules, and it has, just like every jurisdiction, specific ethical rules that apply to prosecutors. I think that you don't become complicit in the denial of due process, because in each case, evaluating the prosecutor's comments in context and balancing it up against the weight of the evidence, the weight of both the prosecutor and the defense evidence, you look in to see, in each case, was that particular defendant denied a fair trial? And the idea that you reverse a conviction, that you say you might be guilty as sin, and in fact, the prosecutor presented overwhelming evidence that you're as guilty as sin, but unlike your guilty counterpart, one county over, your prosecutor was bad, and so we're going to give you the windfall of a new trial. Your counterpart, one county over, good prosecutor, they're going to stay in prison. You, you got a bad prosecutor, so as guilty as you are, and as much evidence that was lodged against you, we're still going to give you that windfall, and that is directly contrary to the U.S. Supreme Court holding in Smith v. Phillips. We don't punish society for the misdeeds of the prosecutor. We punish the prosecutor for the misdeeds of the prosecutor, right? And so if there's a grievance to be filed, it can be filed. There are ethical rules in place. Those can be enforced, but the idea that we enforce this by reversing trials, we don't do that unless the misconduct was so, so bad that it pervaded the entire trial and made a denial of due due process, and I understand. His argument in part is that it did do that, so I'm not saying he's not making the argument. He is, but it didn't, right? And more to the point, a reasonable jurist could hold that it didn't, and so even if this Court is so troubled that it agrees with my brother counsel that this actually not only crossed the line but crossed the line so much that it outweighed all this overwhelming evidence and that a different result was probable, it would still have to go the extra step of saying no reasonable jurist, no reasonable jurist could look at this mountain of evidence against him and say, you know what, as much as she might have crossed the line, and there's a huge difference between going up to the line and crossing the line, right? Darden says a prosecutor may strike hard blows but may not strike foul ones. So what does that mean if we say a prosecutor may strike hard blows, right? She can make emotional arguments. She doesn't have to couch her arguments in the blandest of terms. These cases hold this. There's nothing inherently improper about a prosecutor bringing some emotion to the case, right? The question is when she crosses the line, and so even if you think that in this case she crossed the line, a reasonable jurist could still hold, as the Michigan Court of Appeals held, as the magistrate judge held, that it was not so much as to make the resulting conviction a denial of due process. I think if you look at most of these so-called claims of prosecutorial misconduct in context with what the prosecutor was trying to do, it really wasn't error at all. But you even come to the conclusion that in this case certain of the conduct crossed the line. But that's what you said earlier. Well, in terms of calling the expert a whore, which I don't believe was one of the instances that is in here. I mean, there are specifically seven, depending on how you count them, seven instances that are briefed, and I don't believe that's one of them. So, yeah, calling the prosecution expert a whore, yeah, that's over the line. But what does it tell the jury that the jury doesn't already know? I mean, all it tells the jury is that we already know this is a paid expert who is not here out of a sincere belief that the defendant, this is somebody who's. . . But the prosecutor could have said, you know, the defendant's expert is a paid expert or paid witness. You know, they've testified for the defense 57 times, and, you know, and so that makes the point. As you say, this was done. And, you know, this, we're kind of getting off track here, but the point is how do you make certain that you send the message that prosecutors have not just an obligation to act to win, but they have an obligation to act within those bounds and ethically. And if you have overwhelming evidence, why contaminate it with all this other stuff? And, you know, as you say, that doesn't mean that somebody gets a free pass, but I think that, you know, the message has to be sent at some point in time. How you send it, I don't know, but it has to be. Well, I don't disagree that a message should be sent. And, in fact, I think there are mechanisms by which to do it. And the idea of granting a new trial to someone who is overwhelmingly proven to be guilty based on conduct that. . . Well, we know, you've already said. Right. I'm starting to repeat myself, and I see that I'm out of time. I'd be glad to answer any other questions. Well, you didn't get into the issue of the GPS being in violation of the Fourth Amendment because it was without a warrant. Your brief is clear on that issue. I don't know if you want to add anything or leave it to your brief. I mean, since you're giving me the opportunity, I'll just say briefly that I think the two simplest ways to dispose of it is this happened years before Jones, and so in terms of a deficient performance inquiry, the idea that counsel should have somehow anticipated Jones and known that this was an illegal search, it wasn't even established that it was a search in 2006, 2007, 2008, right? And so that's, number one, looking at deficient performance, you have to show that the attorney was incompetent for failing to do this. And Jones didn't even come out for three, four more years. And the second way is that Tammy Cyan was absolutely not a crucial prosecution witness, as she's described in the brief, one witness of more than 100. In fact, her testimony was helpful to the defense because out of all these witnesses that said he hated his wife, he was constantly complaining and bad-mouthing her and abusive to her, she was the one who said he described his marriage as wonderful and loving, the best five years, and he cried when he talked about her. So the idea that this case rose and fell for the prosecution on the testimony of Tammy Cyan is just untenable. So either on harmless error or on there's absolutely no deficient performance, those would be easy ways to dispose of the claim. All right. Thank you, Your Honor. So we request affirmance. Thank you. Any rebuttal? Thank you. Backing in through the most recently mentioned first, Tammy Cyan was a crucial witness for the prosecution because they used her to establish that he had an affair with her at her death and therefore tried to reinforce his motive to kill his wife so he could have a sexual relationship with another woman. She was a very important witness to the prosecution. The argument that it wasn't against the law to warrantlessly search a vehicle using a GPS tracker at the time of this trial is not what our deficiency analysis is about. Our deficiency analysis is about the fact that the attorney got a year before the trial the information that a tracker had been used, and he failed to investigate this. He failed to determine what the meaning of this was. He failed to request the reports regarding that. And if he had done that, he would have learned about the Tammy Cyan testimony, and he would have learned that, in fact, Ms. Brophy, who's the prosecution used to allege, was someone that he was allegedly having an affair with before her death or had a relationship, forgive me, they didn't allege sexual relationship, before the death. But that would have shown exculpatorily that, in fact, their relationship ended before his wife's death, and it did not support the prosecution's theory. And with respect to the relation back, you can't view this conduct and highlight, excuse me, in hindsight, the fact is that when you view the prejudice portion of the Strickland test, you use the current law to determine whether or not there was prejudice. And the current law is that it was a violation of the Fourth Amendment. And questions about what if he had requested the information? Well, the chances are he would have said, oh, my goodness, there's a warrantless search here. I made challenges. He may have won that motion at that time, even though there was no law regarding it, because it may have been regarded then as a warrantless search. So we think the hindsight argument is answered by the prejudice inquiry taking place under present law. With respect to procedural default, we wanted to indicate that Thomas v. Arnn, 474 U.S. 140, holds that if you don't object to it, it's waived. Don't believe that's been overruled. And if it's not waived, we think that there was not an independent and adequate state ground for the court to procedurally default the prosecutorial misconduct claim. There's some confusion in the Sixth Circuit regarding this point. You're aware of it. I'm not going to address it here. I don't have the time. It's addressed in our brief carefully. But essentially, the Supreme Court of Appeals relied on a merits-based ground. They relied on deciding a federal question and determined that there was no prosecutorial misconduct. And when they do that, it's not independent of the federal question. It's not an independent ground. You have to have an adequate and independent ground to procedurally default. They did not have an independent ground to procedurally default. I probably don't have enough time to launch into all the procedural aspects of this case. I believe that, indeed, this line was crossed. And, indeed, we can get to the question of whether this trial was fair. And I would submit, when you talk about consciousness of guilt, I think the prosecutor was very conscious of what a difficult circumstantial case they had to make. And how, in the end, it would be balanced in many ways by conflicting explanation of the facts. And that's why they relied on this egregious course of prosecutorial misconduct. And that clearly denied the petitioner a fair trial. And it was contrary to federal law within the meaning of habeas corpus relief. Thank you for this opportunity. Thank you very much. And the case is submitted. Thank you. Let me call the next case. Case number 185434.